**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RODNEY DEON BETHANY, 1221925,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:09-CV-288-N** |
| | ) | |
| **RICK THALER, Director, Texas** | ) | |
| **Dept. Of Criminal Justice, Correctional** | ) | |
| **Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court.  The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

Petitioner challenges his convictions for aggravated robbery of an elderly person and robbery.  *State of Texas v. Rodney Dean Bethany*, Nos. F-0400122-KW and F-0400123-KW (363rd Jud. Dist. Ct., Dallas County, Tex., Feb. 24, 2004).  Petitioner was sentenced as a repeat offender to life imprisonment on both convictions.

On June 13, 2005, the Fifth District Court of Appeals affirmed the convictions and sentences.  *Bethany v. State*, Nos. 05-04-00361-CR and 05-04-00362-CR (Tex. App. – Dallas, June 13, 2005).  On December 7, 2005, the Court of Criminal Appeals denied Petitioner's petitions for discretionary review.  PDR Nos. 943-05 and 944-05.

On February 22, 2007, Petitioner filed state habeas petitions attacking each conviction. *Ex parte Bethany*, Nos. 69,480-02 and 03. On January 28, 2009, the Court of Criminal Appeals denied the petitions without written order on the findings of the trial court.

On February 6, 2009, Petitioner filed the instant § 2254 petition. He argues:

1.      The prosecutor withheld *Brady* evidence;

2.      The state was wrongfully allowed to amend the indictment;

3.      His due process rights were violated when the court made no affirmative finding of a deadly weapon;

4.      He was denied the right to counsel;

5.      He received ineffective assistance of counsel when:

      (a)      counsel failed to properly investigate the case;

      (b)      counsel failed to request an accomplice witness jury instruction;

      (c)      counsel failed to object to the state's alteration of the indictment;

      (d)      counsel failed to file motions helpful to the defense.

On April 29, 2009, Respondent filed his answer. On May 29, 2009, and June 3, 2009, Petitioner filed responses. The Court now determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> At trial, Lasonya Martin testified she and appellant were living together and decided to look at apartments in Balch Springs. They had Martin's baby, Alexander, with them when they stopped at the Autumn Run Apartments. They told the manager, a "white, older, heavyset woman," they were looking for an apartment special. According to Martin, she and [Petitioner] were ready to leave the manager's office when [Petitioner] asked the manager if he could put some water in the baby's bottle. The manager took

appellant back to a sink where he filled the bottle.  When he returned, he handed Martin the bottle, and she stood up to leave.  She turned around, then heard a loud noise.  Looking back, she saw the manager on the floor. [Petitioner] had hit her, knocking her to the ground. [Petitioner] kneeled by the manager, removing the rings from her finger.  He told Martin to close the blinds and lock the door.  She was in shock but did as she was told.  After about three minutes, she opened the door to leave.  There was a "Chinese guy" standing there. [Petitioner] told her to leave, so she went to the car.  He pulled the "Chinese guy" in the office.

When [Petitioner] came out, he had the manager's purse and the man's wallet. [Petitioner] told Martin "he beat the guy up, that [there] was a lot of blood in there."  They left and drove to a gas station where [Petitioner] used a credit card to fill the gasoline tank.  Keeping the credit cards and cash, he threw the purse and wallet in a trash dumpster.  When asked whether [Petitioner] said anything when he came out of the office with the stolen items, Martin said, "He was happy.  I guess he enjoyed what he did . . . he was telling me about the rings, that they were real, that he could make a lot of money off of 'em."  Approximately one month after the incident at the apartment complex, the police found Martin and [Petitioner] living at the Budget Suites in north Dallas.  On cross-examination, Martin testified she did not use the credit cards [Petitioner] stole but that a mutual friend, Camille, tried to use one of the cards at a Pizza Hut.  Martin conceded she had previously "committed the offense of credit card abuse."

Officer Billy Don Watts testified he responded to a call about the robberies.  When he arrived at the scene, the office was torn up, papers were strewn about, and there was quite a bit of blood on the floor.  He spoke to the victims and got a description of the vehicle involved.  When he received a report that someone had tried to use one of the credit cards at a Pizza Hut, he tracked down Latrice Lafayette Camille.  Acting on the information Camille gave him, Officer Watts went to the Budget Suites at I-635 and Forest Lane and was able to speak with Martin.  She cooperated with Officer Watts, giving him [Petitioner's] name and date of birth.  When the police computer indicated there was a warrant for [Petitioner's] arrest on a parole violation, Officer Watts arrested him and transported him to jail.  The officer compiled a photographic lineup which he showed to the apartment manager, Lila Massey.  She made a positive identification of [Petitioner] "really, really fast."  The other victim, Sopheap Ean, was unable to make a positive identification.

Massey testified she was 70 years old at the time of the robbery. . . . When [Petitioner] asked for some water for the baby's bottle, she took him back to the sink. . . . [H]e gave the bottle to the baby, then hit Massey with his fist.  Massey did not remember what happened from that point until the police arrived.  Her face was swollen, bruised, and cut, and she required stitches.  She was in the hospital for several days and rehab after that.

Ean testified he was the maintenance man at the apartment complex.  He had been

in the manager's office but left to get lunch.  When he returned, there was a man, a
woman, and a baby in the office.  The man said he had a gun and threatened Ean.  He told
Ean to turn around which Ean did, but when Ean tried to lie down, the man hit him in the
face.  Ean offered the man his wallet which he took.  He then hit Ean again.  Ean did not
know how many times he was hit but knew he blacked out.

*Bethany v. State*, Nos. 05-04-00361-CR and 05-04-00362-CR at 3-5 (Tex. App. – Dallas, June

13, 2005).

### III.  Discussion

### 1.       Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

>      (d)      An application for writ of habeas corpus on behalf of a person in custody pursuant
>               to the judgment of a state court shall not be granted with respect to any claim that
>               was adjudicated on the merits in State court proceedings unless the adjudication
>               of the claim –
>
>               (1)      resulted in a decision that was contrary to, or involved an unreasonable
>                        application of, clearly established Federal law, as determined by the
>                        Supreme Court of the United States; or
>
>               (2)      resulted in a decision that was based on an unreasonable determination of
>                        the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id*.

**2.      Brady Violation**

Petitioner argues the prosecutor withheld evidence in violation of *Brady v. Maryland*,

373 U.S. 83 (1963).  Petitioner claims the prosecutor withheld: (1) complainant Massey's

medical records; (2) surveillance video of the assailant using Massey's credit cards; (3) the

testimony of Camille Lafayette and the Pizza Hut employee; (4) the criminal history for Lasonya

Martin; (5) inducements or promises the government made to Lasonya Martin for her testimony;

and (6) an audio tape of Petitioner's interrogation.

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed

favorable, material evidence that was not discoverable through due diligence.  *Brady*, 373 U.S. at

87.  Evidence is "material" if there is a "reasonable probability" that the outcome of the trial

would have been different had the evidence been disclosed to the defendant.  *United States v.*

*Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).  *Brady,* however, "does not obligate the State to

furnish a defendant with evidence that is fully available to the defendant through the exercise of

reasonable diligence."  *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Rector v.*

*Johnson*, 120 F.3d 551, 558 (5th Cir. 1997); *see also, In re Smith*, 142 F.3d 832, 836 (5th Cir.

1998) (finding that if defendant, using reasonable diligence, could have obtained the

information, no claim arises under *Brady*); *United States v. Aubin*, 87 F.3d 141, 148-49 (5th Cir.

1996) (finding that due diligence on the part of the defendant is a necessary element in a

successful *Brady* claim).

Petitioner claims that complainant Massey's medical records would show she was

heavily medicated when she identified Petitioner's photo from the photo line-up.  To support his

claim, he cites Massey's trial testimony where she testified that after Petitioner hit her in the head, she could not return to work for four months. (Trial Tr. Vol. 5 at 50). She stated that at times she still becomes dizzy from her head injury. (*Id.*) Petitioner, however, has submitted no evidence that Massey was heavily medicated at the time she identified him from the photo line-up or that any medication rendered her identification of him unreliable. Additionally, Petitioner has not shown that the government was in possession of any of Massey's medical records. Petitioner's claims are conclusory and should be denied.

Petitioner argues the prosecution withheld surveillance video of the assailant using Massey's credit cards. Petitioner has failed to show that any video-tapes exist and/or that the state failed to disclose any video-tapes. Additionally, the prosecutor did not dispute that Petitioner was not the person who attempted to use Massey's credit card at Pizza Hut. Ms. Martin testified at trial that Petitioner gave Camille Lafayette the stolen credit cards, which she used to order pizza from Pizza Hut over the telephone. (Trial Tr. Vol. 4 at 35; Vol. 5 at 35, 57-58,113.) Petitioner has failed to show a *Brady* violation.

Petitioner claims the prosecutor withheld Lasonya Martin's criminal history, and failed to disclose that the state agreed to continue Ms. Martin's probation in exchange for her trial testimony. Petitioner, however, has not shown he was unable to obtain Ms. Martin's criminal history through his own investigation. At trial, the prosecution asked Ms. Martin about her criminal history and she stated had current charges pending. (Trial Tr. Vol 4 at 31.) In fact, defense counsel asked Ms. Martin if she had previously abused credit cards and she admitted that she had. (*Id*. at 34-38.) She also testified that the state made no promises to her regarding her then-pending charges. (*Id*. at 31.) Petitioner has submitted no evidence that Ms. Martin was

given favorable treatment in any criminal case in exchange for her trial testimony.  This claim is conclusory and should be denied.

Petitioner argues the prosecution withheld an audio-tape of his interrogation.  He claims that in that interrogation, Detective Walts told him he would "make this case stick on appellant whether he did it or not."  (Pet. Mem. at 8.)  The record shows that Detective Walts testified at trial that the interrogation was recorded and he believed the recording was present at trial.  (Trial Tr. Vol. 5 at 37.)  There is no evidence that this recording was withheld or that Detective Walts made the comment that he would make the case "stick" on Petitioner whether Petitioner was guilty or not guilty.  This claim is conclusory and should be denied.

**3.      Indictment**

Petitioner argues the trial court erred when it allowed the prosecution to amend the indictment during trial.  Petitioner raised this claim on state habeas review.  The Court of Criminal Appeals denied the claim.  Where the question of sufficiency of the indictment is presented to the highest state court of appeals, then the issue is foreclosed in federal habeas proceedings.  *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009) (citing *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994)).  This claim should therefore be denied.

**4.      Deadly Weapon**

Petitioner argues that the indictment contained a deadly weapon allegation, but the court failed to make an affirmative finding of a deadly weapon.  He states that because there was no deadly weapon finding, his conviction should be reversed.

The record shows that at trial, the state moved to abandon the deadly weapon language in the indictment.  (Trial Tr. Vol. 5 at 127-28.)  Defense counsel agreed with the prosecution's

motion to strike the deadly weapon language, and the court granted the motion.  (*Id*.)  The state

was therefore not required to prove that Petitioner used a deadly weapon, and this issue was not

presented to the jury.  This claim should be denied.

**5.      Right to Counsel**

Petitioner argues he was denied the right to counsel while confined in the Balch Springs

jail.  He states he had a right to counsel during the pre-indictment photographic line-up and

while he was incarcerated in the Balch Springs jail for five days before being transferred to the

Dallas County jail.

The Sixth Amendment right to counsel, however, does not attach until a formal judicial

proceeding is initiated by indictment, information, arraignment or preliminary hearing.  *United*

*States v. Laury*, 49 F.3d 145, 150 (1995).  It does not apply to pre-indictment lineups.  *Kirby v.*

*Illinois*, 406 U.S. 682, 689, 690 (1972); *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989).

Officer Walts conducted a photographic lineup with complainant Massey on March 27, 2008.

(Trial Tr. Vol 5 at 8-9.)  Petitioner was not indicted until January 29, 2004, and January 30,

2004.  (Clerk's Record at 2.)  Additionally, Petitioner does not argue that any illegally obtained

statement was taken during his five days in the Balch Springs jail and admitted at trial. These

claims should therefore be denied.

**6.      Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1)

counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so

gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be

highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (A)     Failure to Investigate

Petitioner argues his counsel failed to obtain surveillance videos showing who used complaint Massey's credit cards. Petitioner also argues his counsel should have called Camille Lafeyette as a witness to testify that she and Ms. Martin used the credit cards. It was not disputed at trial, however, that Petitioner did not use the credit cards. He was also not charged with using the credit cards. This claim is without merit.

Petitioner claims his counsel should have obtained the medical records of Ms. Massey to show she was heavily medicated at the time she identified Petitioner from the photo line up. Petitioner, however, has submitted no evidence that Ms. Massey was on medication on the day she identified his photograph and/or that any medication affected her identification of him. His claim is conclusory and should be denied.

Petitioner argues his counsel failed to call alibi witnesses. The record shows, however,

that defense counsel called Petitioner's sister, Falenthia Tatum, as an alibi witness.  Ms. Tatum

testified that at the time of the robbery, Petitioner was at her house for a barbecue.  (Trial Tr.

Vol. 5 at 117-118.)  Defense counsel therefore did call an alibi witness to testify.  Petitioner does

not identify any other alibi witness his counsel should have called.  Petitioner's claim should be

denied.

Petitioner claims his counsel failed to obtain a tape recording of his interrogation.  He

claims Detective Walts stated on the tape that he would convict Petitioner regardless of whether

Petitioner was actually guilty.  Petitioner has failed to show the existence of any recording where

Detective Walts made such a statement.  Petitioner's claim is conclusory and should be denied.

Petitioner argues his counsel failed to investigate the criminal history of Ms. Martin, and

therefore failed to impeach her credibility when she testified.  The record shows, however, that

defense counsel questioned Ms. Martin about her criminal history, and questioned her about lies

she initially told the police.  (Trial Tr. Vol. 4 at 37-38; Vol. 5 at 107, 114.)  Petitioner had failed

to show his counsel was deficient for not obtaining Ms. Martin's criminal history or attempting

to impeach her testimony.

### (B)     Jury Charge

Petitioner argues his counsel was ineffective for failing to request a jury charge regarding

an accomplice witness.  Under Texas law, "[a] conviction cannot be had upon the testimony of

an accomplice unless corroborated by other evidence tending to connect the defendant with the

offense committed; and the corroboration is not sufficient if it merely shows the commission of

the offense."  TEX. Code Crim. Proc. art. 38.14.  Petitioner was not entitled to an accomplice

witness instruction, however, because Ms. Martin was not an accomplice to the aggravated

robbery.  She was not charged with any crime, and Detective Walts testified the police found no

evidence that she was an active participant in the offense.  (Trial Tr. Vol. 5 at 33; 39-40.)

Petitioner's claim should be denied.

    **(C)**    **Indictment**

Petitioner argues his counsel was ineffective for failing to object to the amendment of the

indictment.  At the close of evidence, the prosecutor moved to strike the deadly weapon

language in the indictment, which the court granted.

Petitioner was charged with aggravated robbery under Texas Penal Code 29.03 which

states that a person commits aggravated robbery if he commits robbery and:

(1)    causes serious bodily injury to another;

(2)    uses or exhibits a deadly weapon; or

(3)    causes bodily injury to another person or threatens or places another person in

        fear of imminent bodily injury or death, if the other person is:

    (A)    65 years of age or older; or

    (B)    a disabled person.

Under Texas law, the state may abandon allegations in an indictment when it: (1)

abandons one or more alternative means of committing the offense; (2) reduces the charged

offense to a lesser included offense; or (3) eliminates surplusage.  *Eastep v. State*, 941 S.W.2d

130, 135 (Tex. Crim. App. 1997), *overruled on other grounds*, *Riney v. Texas*, (Tex. Crim. App.

2000).  In this case, the state abandoned one alternative means of committing the offense by

striking the deadly weapon language, but the offense still constituted aggravated robbery because

the victim was over sixty-five years old.  Petitioner has failed to show his counsel was deficient

for failing to object to the state's motion to strike this language.  Counsel is not required to make

frivolous objections.  *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

>    **(D)     Motions**

Petitioner argues his counsel was ineffective because he did not file a motion for new

trial, notice of appeal or motion for severance.  Petitioner has stated no basis for quashing the

indictment.  He has also failed to show any meritorious claims for a motion for new trial or

appeal.  Additionally, his appeal was considered by the state court and denied.  He has also

shown no prejudice regarding a motion to sever.  The same witnesses could have testified at each

trial because the robberies were related.  *Burnett v. Collins*, 982 F.2d 922, 929-30 (5th Cir. 1993)

(rejecting ineffective assistance of counsel claim based on failure to request severance where

evidence as to both crimes could have been admitted at each trial) (*citing Manning v. Blackburn*,

786 F.2d 710 (5th Cir. 1986)).  Petitioner has failed to show his counsel was deficient and that he

suffered the required prejudice.  This claim should be denied.

## 7.  Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a

constitutionally protected interest.  Accordingly, the state courts' determination to deny relief is

not contrary to or does not involve an unreasonable application of clearly established federal law

and is not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.

Signed this 31st  day of August, 2011.


_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).